[Crim. No. 10417. Third Dist. Jan. 28, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
WALLACE WALTER WILLIAMS, JR., Defendant and Appellant.

**448**

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Richard G. Fathy and Louis N. Hiken, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Karen Ziskind, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—Convicted of numerous sexual and related crimes against 4 female victims, defendant was sentenced to state prison for a total of 22 years and 4 months.[1] On appeal from the judgment, defendant charges prejudicial error in the admission of two prior uncharged rape offenses and in the denial of a mistrial motion after a prosecution witness referred to his parole status; furthermore, defendant contends the evidence was insufficient to support a finding of infliction of great bodily injury in the commission of the rape upon Nancy S. charged in count VIII. We affirm the judgment.

---

[1]The crimes of which defendant was convicted are as follows: assault with a deadly weapon in violation of Penal Code section 245, subdivision (a) (counts IV, VI, XI, and XV), false imprisonment with a finding of use of a knife in violation of Penal Code sections 236 and 12022, subdivision (b) (count V), kidnaping with use of a knife in violation of Penal Code sections 207 and 12022, subdivision (b) (counts VII, XII, and XVI), rape by force and threat with a finding of use of a knife in violation of Penal Code section 261, subdivisions 2 and 3, and section 12022, subdivision (b) (counts

### Victim Sharon S. (Counts IV and V)

Sharon S., 25 years old, identified defendant as the man who assaulted and falsely imprisoned her on the night of July 27, 1978. At about 10 o'clock that evening, she was returning to her car in a Sacramento City College parking lot when defendant appeared from behind some nearby bushes and approached her. He said, "excuse me a minute," placed a bandana over his face, and pulled out a butcher knife from underneath a notebook he was holding. When Sharon screamed, defendant told her to "shut up" and get into her car and she would not get hurt. Threatening her with the knife, he forced her into the back seat and told her to lie down and be quiet.

Defendant demanded money. Sharon told him she did not have any but he could take her purse. When she started to reach for the purse in the front seat, he told her to get away from the door. Defendant then backed out of the car himself and closed the door. Sharon locked the doors and defendant walked away. Throughout the encounter, defendant spoke in a low monotone.

### Victim Nancy S. (Counts VI through X)

Nancy S., age 24, described the physical features of the man who assaulted, kidnaped, raped, sodomized, and attempted to rob her in detail and identified defendant as having a similar appearance and voice. At about 8:40 p.m. on August 9, 1978, she was returning to her car in a Sacramento City College parking lot; defendant approached her from across the lot. He held an eight-inch kitchen knife in one hand, grabbed her wrist with the other, and said, "Get in the car. Don't scream . . . and you won't get hurt."

Ordering Nancy to move to the passenger side of the front seat, defendant entered the driver's side and asked where her money and keys were. He tied her hands behind her back with a rope and blindfolded

---

VIII, XIII, and XVII) and with a finding of infliction of great bodily injury within the meaning of Penal Code section 12022.7 as to count VIII, forcible sodomy with a finding of use of a knife in violation of Penal Code section 286, subdivision (c) and section 12022, subdivision (b) (counts IX and XVIII), attempted robbery with a finding of use of a knife in violation of Penal Code sections 211, 664 and 12022, subdivision (b) (counts X and XIX), robbery with a finding of use of a knife in violation of Penal Code sections 211 and 12022, subdivision (b) (count XIV).

her. He then told her to kneel down on the floorboard and to place her head on the seat.

Defendant drove the car to a quiet, protected area and said, "You are going to give me some of that good pussy." Nancy replied that she had never had intercourse before and that it was going to be difficult.

Defendant partially disrobed the victim from the waist down; leaving the left shoe undisturbed, he attempted but was unable to remove the right shoe. He then raped her three separate times. She felt "tortured" and complained repeatedly about the pain, but defendant said his knife would hurt more. He demanded that she "move" during the rape and threatened to cut off her breasts if she stopped. Defendant also committed an act of oral intercourse. After searching Nancy's car and purse, defendant drove back to the campus parking lot. Instructing the victim to count to 100, defendant fled on foot. Throughout the ordeal, defendant spoke with confidence and in a low baritone voice.

Physical examination of Nancy revealed her hymen still attached but torn and with the edges bleeding; fresh blood was present in the vaginal cavity.

### Victim Flora J. (Counts XI through XIV)

Flora J., age 52, identified defendant as the man who assaulted, kidnaped, robbed, and raped her on the night of August 21, 1978. She based her identification on defendant's voice and walk. After class was over at about 9:30 p.m., she was returning to her car parked near Sacramento City College when she noticed defendant walking toward her. He had on a mask and was carrying a knife. He pressed the knife to her back and demanded her money. He ordered her to get into her car and to kneel on the floor on the passenger side with her head on the seat. He then blindfolded her, tied her wrists behind her back, and told her to be quiet or she would be sorry. Flora told defendant to take her $80 in cash and the car and to leave her alone, but he put the knife to her neck and told her to shut up.

Defendant drove the car to what sounded like a garage. He said, "You had better have some hot pussy" and undressed her from the waist down, including removal of her shoes. He then raped her. He re-

peatedly ordered that she "move hard and fast." At one point, he replaced her left shoe.

Defendant then drove Flora back to the site of her abduction. He left after telling her not to move until she had counted to 100. Flora then discovered that her money had been taken from her purse.

### Victim Aldy G. (Counts XV through XIX)

Twenty-nine-year-old Aldy G. identified defendant as the man who assaulted, kidnaped, raped, sodomized, and attempted to rob her on the night of August 31, 1978. At about 9 p.m. in a commercial parking lot several blocks from Sacramento City College, defendant grabbed her, put a knife to her throat, and ordered her to kneel down on the floor on the passenger side of her car and to place her head on the seat. He said: "Don't scream. I won't hurt you. I just want your money." He tied her arms behind her back and blindfolded her.

Defendant searched Aldy's purse, found her car keys, and drove to what sounded like a garage. He said he wanted some "hot pussy," undressed her from the waist down, and then replaced her left shoe. He then raped her while repeatedly threatening to kill her if she did not "move faster and harder." He also committed an act of sodomy upon her and again searched her purse.

Defendant drove back to the parking lot and left after telling Aldy to count to 100. Throughout, defendant spoke in a soft monotone.

Evidence showed that in April or May of 1978, defendant moved from Los Angeles to an apartment complex near Sacramento City College. In the first half of July, he lived there with his girl friend until she moved out following an angry discussion.

Defendant was arrested near Sacramento City College while wearing clothing similar to that worn by the assailant of victims Sharon S., Nancy S., Flora J., and Aldy G.; at the time defendant was carrying a notebook and knife. In addition, items of physical evidence belonging to defendant and his girl friend (a scarf, knife, string and gold chain) were identified as having been worn and used by the perpetrator.

Defendant also admitted committing two rapes in Los Angeles in 1973. The salient characteristics of these two prior offenses similar to

those of the 1978 crimes were (1) defendant's loss of a girl friend immediately preceding the sexual assault, (2) approach of the victim at night; and (3) use of a weapon (gun) to force her into a nearby car; more strikingly, in each case defendant (4) blindfolded his victim and tied her hands behind her back, (5) ordered her to kneel on the floor on the passenger side with her head on the front seat, (6) drove a short distance to an isolated location, (7) disrobed the victim from the waist down, (8) raped her inside the car while she was still blindfolded and tied, (9) demanded that she "move" during intercourse, and (10) spoke in a distinctively calm and low voice throughout.

Defendant testified in his own behalf and denied committing any of the crimes charged.

## I

As indicated, the trial court admitted evidence of two uncharged similar sexual offenses committed by defendant in 1973. Defendant contends that the trial court erred prejudicially in admitting such evidence. The contention is without merit.

Evidence of other sex offenses having distinctive, similar characteristics to those charged is generally admissible on the issue of a defendant's identity if such offenses are not too remote in time, are sufficiently similar to the offense charged, and are committed upon persons similar to the prosecuting witness. (*People* v. *Kelley* (1967) 66 Cal.2d 232, 239, 243 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Thomas* (1978) 20 Cal.3d 457, 464-465 [143 Cal.Rptr. 215, 573 P.2d 433]; Evid. Code, § 1101, subd. (b).) Here, defendant's identity was in issue. The trial court found that the prior offenses were not too remote, observing that defendant had spent little intervening time "on the streets so to speak"; furthermore, the court found the "bizarre details" of defendant's prior conduct were strikingly similar to the charged offenses, and the victims of the prior offenses were similarly situated to those in 1978. We agree the similarities between the prior and charged offenses are striking and thus highly probative on the issue of identity. The trial court did not abuse its discretion under Evidence Code section 352. (See *People* v. *Jackson* (1980) 110 Cal.App.3d 560, 565-566 [167 Cal.Rptr. 915]; *People* v. *Pendleton* (1979) 25 Cal.3d 371, 376-377 [158 Cal.Rptr. 343, 599 P.2d 649].)

## II

■ In cross-examining Detective Vinsant, a prosecution witness, defense counsel asked when the detective had learned that defendant had been driving a car. The detective responded: "I don't have the exact date. It was when I talked to his parole officer." Defendant then moved for a mistrial on the ground that the effect of revealing his parole status to the jury was incurably prejudicial. Although the trial court had previously ruled that the jury was not to be informed of defendant's parole status, the motion was denied after a finding that the remark did not deprive defendant of a fair trial. The court reasoned that the admission of evidence of the similar prior offenses would in any event lead a juror to believe that some official action had been taken as a result of those offenses.

Defendant contends that the trial court abused its discretion in denying the mistrial motion. The contention is groundless. In light of the admission of the prior offenses as well as other substantial evidence pointing to defendant's identity as the perpetrator, it is not reasonably probable that he would have obtained a more favorable result had the remark about his parole status not been made. (*People* v. *Morgan* (1978) 87 Cal.App.3d 59, 69, 76 [150 Cal.Rptr. 712]; *People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## III

■ The jury found that defendant inflicted great bodily injury upon Nancy S. during the commission of the rape upon her. Relying on *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274], defendant contends that the jury's finding is not supported by the evidence. Under the present circumstances, we cannot agree.

Penal Code section 12022.7, provides that where it is charged and proved that defendant intentionally inflicted "great bodily injury" on another during the course of a felony, his term of imprisonment is enhanced an additional three years.[2] As that provision is interpreted in

---

[2] Penal Code section 12022.8 now is the controlling enhancement provision for rape and other sexual offenses in which great bodily injury is inflicted. It was enacted in 1979 (Stats. 1979, ch. 944, § 18, eff. Jan. 1, 1980) and has no application to this case.

*Caudillo*, the emotional and physical harm inherent in every forcible rape of itself does not constitute the great bodily injury contemplated by section 12022.7. (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 587.) Rather "great bodily injury" refers to "significant or substantial physical injury 'in addition to that which must be present in every case of rape [by force].'" (*Id.,* at p. 585, quoting *People* v. *Richardson* (1972) 23 Cal.App.3d 403, 412 [100 Cal.Rptr. 251]; see also Pen. Code, § 12022.7 and *People* v. *Wells* (1971) 14 Cal.App.3d 348, 357 [92 Cal.Rptr. 191].)

In *Caudillo*, the victim was forcibly raped, sodomized, and orally copulated. The Supreme Court held there was no showing of any substantial physical consequences beyond those inherently incident to such offenses. Although the victim suffered extreme humiliation and severe emotional trauma due to the flagrant violation of her person and privacy, there was no evidence the victim suffered any pain from the sexual acts or any substantial injury, laceration, or hematoma to the affected parts of the body. (*Caudillo, supra,* 21 Cal.3d at pp. 575, 582, 588.) There was evidence the victim gagged, vomited, and experienced diarrhea as a result of defendant's sexual abuse and suffered two superficial cuts on the neck caused by defendant's knife. (*Id.,* at pp. 569, 588.) From these facts, however, the *Caudillo* court found insufficient evidence to sustain a finding of infliction of great bodily injury under section 12022.7. The court pointed out the severe distress manifested by the victim was emotional not *physical* (*id.,* at p. 582); the cumulative bodily harm normally incident to the three sexual offenses was not *significant* or *substantial* within the context of section 12022.7 (*Caudillo, supra,* at p. 587); and the additional bodily injuries were "transitory and short-lived," not "severe or protracted." (*Id.,* at pp. 588-589.)

In the instant case, however, the physical injury suffered by Nancy S. is significantly and substantially greater than that ordinarily experienced by a victim of forcible rape. She sustained a torn hymen as a result of which blood accumulated in the vagina. The victim was a virgin and as a result suffered much pain, feeling "tortured" during the rape. The presence and intensity of pain are circumstances relevant to the existence and extent of physical injury. Moreover, defendant was well aware of the victim's virginity and of the pain he was causing her; in fact she told him she was a virgin and complained about the pain.

An act of forcible rape which causes severe physical pain to the victim by virtue of the infliction of physical injury to the affected parts of

her body beyond that inherent in and incident to a forcible rape qualifies for the enhanced punishment called for by Penal Code section 12022.7. The situation here is not unlike the physical injury associated with pregnancy and venereal disease which result from a rape (*Caudillo, supra,* at p. 582; *People* v. *Sargent* (1978) 86 Cal.App.3d 148, 150-152 [150 Cal.Rptr. 113]). In any case the injuries are neither trivial, insubstantial, transitory or short-lived. The jury was properly instructed on the meaning of great bodily injury (*Caudillo, supra,* 21 Cal.3d at p. 581), and there is sufficient evidence to support the jury's factual determination of great bodily injury to Nancy S. under that instruction. (See *People* v. *Caudillo, supra,* at p. 588.)

The judgment is affirmed.

Regan, J., and Carr, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1981. Bird, C. J., was of the opinion that the petition should be granted.