[Crim. No. 16081. Fourth Dist., Div. Two. Jan. 15, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
WILLIAM EUGENE HOLT, Defendant and Respondent.

COUNSEL

Grover C. Trask II, District Attorney, and Richard G. Van Frank, Deputy District Attorney, for Plaintiff and Appellant.

Thomas H. Ludlow, Jr., for Defendant and Respondent.

OPINION

**KAUFMAN, J.**—This is an appeal by the People from an order of the trial court granting a limited new trial which in effect deleted a finding by the jury that defendant had caused bodily injury to the victim within the meaning of Penal Code section 1203.066, subdivision (a)(2), which finding would have rendered defendant ineligible for probation and subjected him to a mandatory state prison sentence.

*Facts*

On October 29, 1982, Jamie R. was 13¾ years old. Tracy Holt, defendant's sister, was a friend of Jamie's. They attended the same school. October 29, 1982, was a Friday. On that date, Jamie went with Tracy, Tracy's parents, and some other people to a Bluegrass Festival. They intended to stay at the festival all weekend.

On Saturday, while she was at the festival, Jamie drank a bottle of wine and smoked some marijuana. She remembered seeing defendant, Tracy's 20-year-old brother, at the festival a couple of times that day, once in the morning and again in the evening.

On Saturday evening, around 8:30 p.m., defendant drove Jamie, his sister Tracy, and a boy named Mark to defendant's house. After they had been there a short time, Jamie started to walk down the hallway to the bathroom. In the hallway, defendant bodily picked Jamie up and carried her into his bedroom. Jamie testified that, although she did not want to go with defendant, she did not do anything to indicate she objected.

Defendant set Jamie down on the bed. He took off her sandals, her jeans and her underpants. Because Jamie was feeling the effects of the marijuana and alcohol, she just lay back with her eyes closed. She felt defendant's bare chest on her chest, she felt "something heavy" pushing on her stomach, and she felt pain in her vaginal area. She felt this pain for about three to five minutes.

Then Tracy yelled out from the other room that someone was coming. Defendant got up and went to the door of the bedroom; Jamie saw that defendant had no clothes on. Jamie jumped up and ran into the bathroom. She was in such a hurry she put her jeans on inside out. She left her sandals and underwear in defendant's bedroom.

It was defendant's mother that had arrived at the house. She drove Jamie and Tracy back to the Bluegrass Festival. After she arrived back at the Bluegrass Festival, Jamie got into a fight with defendant's girl friend, in the course of which defendant's girl friend kicked Jamie between the legs with her cowboy boots, though "not real hard."

Defendant's mother drove Jamie home. It was then about 10 p.m. Jamie took a shower and went to bed. Jamie's mother noticed Jamie's jeans were bloody on the outside of the crotch area. Jamie's last menstrual period had been about two weeks before the incident with defendant. Before this incident, Jamie had never had sexual intercourse with anyone and was a virgin.

Jamie's mother took her to see Dr. Nanayakkara, a board-certified obstetrician and gynecologist, on November 5, 1982, six days after the incident took place. In his examination of Jamie, Dr. Nanayakkara found two linear lacerations to the hymen. The lacerations were each somewhat less than a

quarter inch in length. There were also areas of contusion and bruising around the lacerations, which indicated they would have bled. The lacerations would have been painful.

Two doctors testified on behalf of defendant. Dr. Dixon testified that the injury was minimal, and was not great bodily harm. He stated the lacerations were caused "by trauma," which could have occurred in a number of ways. Dr. Hendrickson, a board-certified obstetrician and gynecologist, testified such lacerations could be caused by a kick to the crotch, or by other means. The lacerations would not constitute great bodily harm in his opinion. He did not recall his patients ever telling him it was painful for a virgin to have the hymen lacerated, although the hymen can be a sensitive area of the body. He testified some patients may have severe pain from a lacerated hymen, while others may not. He also testified that, because the hand and fingers have more pain-sensing nerves than the hymen, a simple laceration of the fingers would ordinarily produce more pain than the same type of cut of the hymen, but this would not necessarily be true if the hymen were torn.

### The Motion for a New Trial

Defendant was convicted by a jury of a violation of Penal Code section 288, subdivision (b), a lewd and lascivious act with a child under the age of 14 by means of force, violence, duress, menace, or threat of great bodily harm.[1] The jury returned a special finding defendant had committed the act by means of force, violence, duress, menace or threat of bodily harm within the meaning of Penal Code section 1203.066, subdivision (a)(1). It also returned special finding that defendant caused bodily injury to the victim within the meaning of Penal Code section 1203.066, subdivision (a)(2).[2]

---

[1]Penal Code section 288 reads in pertinent part as follows: "(a) Any person who shall willfully and lewdly commit any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six or eight years. [¶] (b) Any person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or threat of great bodily harm, shall be guilty of a felony and shall be imprisoned in the state prison for a term of three, six or eight years."

[2]Penal Code section 1203.066 reads in pertinent part as follows: "(a) Notwithstanding the provisions of Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provision of this section be stricken pursuant to Section 1385 for, any of the following persons: [¶] (1) A person convicted of violating Section 288 when the act is committed by the use of force, violence, duress, menace or threat of bodily harm. [¶] (2) A person who caused bodily injury on the child victim in committing a violation of Section 288."

Defendant moved for a new trial under Penal Code section 1181, subdivisions 6 and 7, on the ground that defendant was guilty only of the lesser offense of violating Penal Code section 288, subdivision (a), that there was no evidence defendant used force, violence, duress, menace or threat of bodily harm, and that the evidence did not support a finding of bodily injury within the meaning of Penal Code section 1203.066, subdivision (a)(2).[3]

The trial court granted the motion for a new trial, erroneously stated to be pursuant to Penal Code section 1186.6. In the course of argument on the motion, the trial court noted that "if it wasn't charged under (b), if it were just charged as a 288(a), then he would be eligible for probation," and also that the court "d[id]n't like minimum sentences, I don't think this defendant ought to be sentenced to State's Prison . . . . It is just not a State Prison offense." The trial court then went on to grant the motion for new trial "on the ground that I don't think that the injury to the hymen in this case is the type of force that the Legislature intended. [¶] . . . I don't feel that a ruptured hymen, with the slight injuries we had here, is the type of violence that the Legislature intended when they put (b) in 288."

The People moved for reconsideration of the ruling, and at the hearing on the motion, the court clarified its earlier ruling, stating it had intended under section 1181, subdivision 6, to grant a limited new trial, finding the defendant guilty of the lesser offense of 288, subdivision (a), without necessity of an actual retrial. The trial court found there was no evidence defendant had used force, violence, duress, menace, or threat of any bodily harm in the commission of the offense. The evidence showed that defendant picked up Jamie and carried her uncomplainingly into the bedroom where he undressed her without objection or resistance of any kind. The trial court stated it did not consider that conduct to be what the Legislature intended to require for a violation of section 288, subdivision (b).

---

[3]Penal Code section 1181 provides in relevant part as follows: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶] 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed; [¶] 7. When the verdict or finding is contrary to law or evidence, but in any case wherein authority is vested by statute in the trial court or jury to recommend or determine as a part of its verdict or finding the punishment to be imposed, the court may modify such verdict or finding by imposing the lesser punishment without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed . . . ."

The prosecution asked also for clarification of the ruling with respect to the special allegations. The trial court stated that, where the evidence of force, violence, duress, menace, or threat of bodily harm was not sufficient to sustain a conviction of section 288, subdivision (b), it was likewise insufficient to sustain the special allegation under section 1203.066, subdivision (a)(1). With respect to the allegation under section 1203.066, subdivision (a)(2), whether defendant had caused bodily injury to the victim, the trial court held that the ruptured hymen was also not the type of injury the Legislature intended within the meaning of section 1203.066, subdivision (a)(2). The court stated it was then modifying and in effect nullifying the two special findings under section 1203.066, subdivisions (a)(1) and (2). The trial court ultimately granted probation to the defendant conditioned among other things on his serving one year in county jail.

### Discussion

No issue is raised as to the propriety of the trial court's granting the motion for new trial by modifying the judgment and finding defendant guilty of the lesser included offense of section 288, subdivision (a). Having found no evidentiary support for the finding the crime was committed by means of force, violence, duress, menace or threat of harm, the court was authorized to modify the verdict by striking the special finding under Penal Code section 1203.066, subdivision (a)(1). (Pen. Code, § 1181, subd. 6.) ■ The principal issue remaining on appeal is whether defendant caused "bodily injury" to the victim within the meaning of Penal Code section 1203.066, subdivision (a)(2); i.e., whether the trial court properly "modified" or struck the special finding of bodily injury on the ground it was contrary to the evidence. We conclude it did not.

Penal Code section 1203.066, subdivision (a)(2), provides probation shall not be granted to: "A person who caused *bodily injury* on the child victim in committing a violation of Section 288." (Italics added.) This standard of "bodily injury" is in sharp contrast to other statutes prescribing added penalties where the defendant has caused *great* bodily injury or *great* bodily harm to the victim. (See, e.g., Pen. Code, §§ 12022.7, 12022.8; *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274]; *People* v. *Williams* (1981) 115 Cal.App.3d 446 [171 Cal.Rptr. 401].)

In *People* v. *Caudillo, supra,* the victim was forcibly raped, sodomized, and orally copulated. The Supreme Court held there was no showing of "substantial or significant injury 'in addition to that which must be present

in every case of [forcible] rape.'" (*Id.*, at p. 585.) There was no apparent injury, laceration or hematoma to the sexual organs or to the anus; the victim did not testify she suffered any pain as a result of the acts of rape, sodomy or oral copulation; and the two cuts she sustained to her neck were slight. Thus, the Supreme Court felt compelled to find the victim in that case had not suffered "*great* bodily injury." (Italics added.)

If, however, the term "*great* bodily injury" means "a substantial or significant physical injury," then the term "bodily injury" must necessarily include a physical injury which is not necessarily unusually substantial or significant. Otherwise there would be no distinction between "great bodily injury" and plain "bodily injury."

The *Caudillo* case supports this view. The Supreme Court, noting the cuts the victim suffered were "superficial," nevertheless conceded such injuries as the victim suffered as a result of the rape itself could constitute "bodily harm." (See *id.*, at p. 586.)

The *Williams* case is also instructive. In that case the victim, who was forcibly raped, told the defendant she was a virgin, and complained of pain while the defendant raped her three times. She suffered a torn hymen, and blood accumulated in her vagina. The injuries in that case were characterized by the court as "significantly and substantially greater than that ordinarily experienced by a victim of forcible rape" and were found sufficient to support a finding of *great* bodily injury. (*People* v. *Williams, supra,* 115 Cal.App.3d 446, 453-455.)

In the instant case, the act of intercourse was painful to the victim. Six days after the incident, the treating doctor found her hymen was lacerated and there were contusions, consistent with bleeding, around the lacerations. The victim bled onto her clothing. The injuries this victim suffered were not different in kind from those suffered by the victim in *Williams*.

The physicians who testified on behalf of defendant characterized the injury to the victim as trivial and transitory, but no witness testified she was not injured. And we reject defense counsel's misconceived and dehumanizing assertion on appeal that the victim's ruptured hymen is not an injury, but is more akin to a design defect of the female body. What is specified by the statute is a "bodily injury" and the injury suffered by the victim in this case was a "bodily injury."

The evidence was legally sufficient to sustain the jury finding the defendant caused bodily injury to the victim. There was therefore no basis for granting a new trial on that issue, nor was the court authorized to strike it

(Pen. Code, § 1203.066, subd. (a)(2)). The court therefore erred in so doing and in granting defendant probation.

*Disposition*

Having so concluded, the question becomes what disposition is to be made of the case. Being aware of the trial court's view that this was not an appropriate case for imposition of a state prison sentence and the probation department's report in which it was opined that if he were not statutorily ineligible because of the "bodily injury" finding, defendant should surely be placed on probation and the probation officer's conclusion that the victim may have been an initiator, willing participant, aggressor or provoker of the incident, we requested the parties to submit supplemental briefs addressed to several questions, including whether imposition of even the three-year lower base prison term prescribed for a violation of Penal Code, section 288, subdivision (a), would have constituted cruel and unusual punishment under the particular circumstances of this case. (See *People* v. *Dillon* (1983) 34 Cal.3d 441, 477 et seq. [194 Cal.Rptr. 390, 668 P.2d 697].)

The parties have complied with our request, but in the final analysis we have concluded we need not resolve the specific question asked by us. At the second oral argument of this appeal, granted so that the supplementally briefed issues might be argued, we were authoritatively advised that pending this appeal defendant completed service of the one-year term in county jail imposed as a condition of probation; is now returned to the community and his family, which the record indicates includes a child; is gainfully reemployed; and is cooperating and progressing satisfactorily on probation. If defendant were now sentenced to state prison for the lower base term of three years, he would be subject to only about eight to nine months of actual confinement after the application of credits, and in our view it would constitute cruel and unusual punishment to subject him to a second deprivation of liberty and to subject him and his family to the trauma of a second separation from the general population with attendant probable loss of employment and family upheaval. (Cal. Const., art. I, § 17.) It is one thing for the state to impose a mandatory prison term on a convict and require him or her to serve it. It is quite another thing to incarcerate a convict as a term of probation, allow the convict to successfully fulfill the condition of probation and return to the general population and then with no additional malfeasance on his or her part, remove him or her a second time from the general population to serve the relatively short balance of what should have been the proper sentence. (See *People* v. *Tanner* (1979) 24 Cal.3d 514, 521-522 [156 Cal.Rptr. 450, 596 P.2d 328].)

Accordingly, the order granting the new trial is reversed only insofar as it purported to eliminate the special finding that defendant caused bodily

injury to the victim within the meaning of Penal Code section 1203.066, subdivision (a)(2). The special finding is ordered reinstated. For the reasons stated, in all other respects the order and judgment are affirmed.

Morris, P. J., and McDaniel, J., concurred.