[No. H000174. Sixth Dist. Oct. 29, 1985.]

THE PEOPLE, Plaintiff and Appellant, v.
VICKIE ENRIQUEZ, Defendant and Respondent.

### COUNSEL

John K. Van de Kamp, Attorney General, Thomas A. Brady, Ann K. Jensen and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Appellant.

Sheldon Portman, Public Defender, and Mary J. Greenwood, Deputy Public Defender, for Defendant and Respondent.

### OPINION

**AGLIANO, J.**—The People appeal from an order of the trial court granting defendant probation following her conviction for sale of PCP (phencyclidine). We determine the trial court had no authority to grant probation and reverse the order.

Defendant was charged by information filed September 6, 1983, with a violation of Health and Safety Code section 11379.5 (sale of phencyclidine (PCP)) committed on January 10, 1983, and further that defendant was

ineligible for probation pursuant to the provisions of Penal Code section 1203.07.[1] Defendant entered a plea of not guilty and denied the probation ineligibility allegation. Following trial by jury which commenced on July 30, 1984, defendant was determined to be guilty as charged whereupon the matter was referred to the probation officer for presentence investigation and report.

At the sentencing hearing held October 16, 1984, the trial court, purporting to exercise authority under Penal Code section 1385,[2] placed the defendant on probation for a period of three years on condition, inter alia, that she serve nine months in the county jail.

■ The People contend the provisions of Penal Code section 1203.07 preclude probation for persons convicted of sale of PCP.

Defendant contends the Legislature did not intend to preclude the court's exercise of power to grant probation under Penal Code section 1385; the commitment of defendant to state prison would constitute cruel and unusual punishment; and, in any event, it would be unjust to commit defendant to state prison at this late date should it be determined the trial court erred in granting her probation.

The evidence underlying defendant's conviction discloses that on January 10, 1983, an undercover police officer telephoned defendant's home attempting to contact her husband, Leonard Arellano, in order to purchase phencyclidine. Defendant agreed to sell the drug since her husband was not home. The officer then went to defendant's home and purchased a hand-rolled cigarette containing phencyclidine from defendant in exchange for $30.

The following factors persuaded the court to grant probation: Defendant, a mother of two children, was married to a known seller and user of drugs who provided her no financial support. She sold phencyclidine only to provide for her children's needs. She desired to work and had completed train-

---

[1] Penal Code section 1203.07 provides, in relevant part: "(a) Notwithstanding the provisions of Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons: . . . [¶] (6) Any person who is convicted of violating Section 11379.5 or 11380.5 of the Health and Safety Code by manufacturing, selling, or offering to sell phencyclidine, or using, soliciting, inducing, encouraging, or intimidating a minor to manufacture, compound, or sell phencyclidine."

[2] Penal Code section 1385 provides: "The judge or magistrate may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading."

ing as a nurse assistant or ward clerk. The trial court found her to be "a person of good character" who had made positive strides in her life and who had no prior criminal record.[3] The probation officer's view was that a commitment to state prison was factually inappropriate, but he acknowledged defendant was statutorily ineligible.

The trial court determined it was in the interest of justice to grant defendant probation. The law, however, provides otherwise.

Penal Code section 1203 generally sets forth the criteria and procedures for granting probation. Subdivision (b) of section 1203 furnishes the court's power to grant probation to "eligible" defendants when "the court determines that there are circumstances in mitigation of the punishment . . . or that the ends of justice would be served by granting probation to the person, . . . ."

Subdivision (e) describes those persons to whom probation shall not be granted "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation, . . ." Included in the latter category is "[a]ny person who knowingly *furnishes* or *gives away* phencyclidine." (Pen. Code, § 1203, subd. (e)(8).) If the court determines the case to be unusual within the meaning of subdivision (e) and grants probation it is required to "specify on the record and . . . enter on the minutes the circumstances indicating that the interests of justice would best be served by such a disposition." (Pen. Code, § 1203, subd. (f).)

The court's power to grant probation is completely withheld, however, when a person is convicted of *selling* phencyclidine. Penal Code section 1203.07, subdivision (a) and subsection (6) together provide that "[n]otwithstanding the provisions of Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons: . . . Any person who is convicted of violating Section 11379.5 . . . of the Health and Safety Code by . . . selling . . . phencyclidine."

Defendant argues that the absence in section 1203.07 of any reference to section 1385 manifests the Legislature's intent to preserve judicial discretion under section 1385 to dismiss the charge prohibiting probation in the interests of justice. "Section 1385 has been construed to provide judicial power to dismiss or strike—within the court's discretion—allegations which, if

---

[3]None of these reasons is stated in the minute order as required by Penal Code section 1385. The minute order prepared for the sentencing proceedings merely contains the statement "unusual case." This entry is not sufficient. (*People* v. *Beasley* (1970) 5 Cal.App.3d 617, 637 [85 Cal.Rptr. 501].)

proven, would enhance punishment for alleged criminal conduct." (*People v. Tanner* (1979) 24 Cal.3d 514, 518 [156 Cal.Rptr. 450, 596 P.2d 328].) However, the Supreme Court in *Tanner* itself determined, under circumstances similar to those here, that the Legislature's intent to completely bar probation was adequately manifested even without explicit mention of section 1385. (*Id.,* at p. 520.) *Tanner* confronted the identical issue presented here in the context of companion section 1203.06 of the Penal Code, which expressly prohibits the grant of probation to any person who personally uses a firearm during the commission of any enumerated crime.

It is significant that the Legislature empowered the court to grant probation in an unusual case where the crime committed was furnishing or giving away phencyclidine. (Pen. Code, § 1203, subd. (e)(8).) Such authorization parallels the discretion given the court under section 1385. Section 1203.07, however, draws the line when the defendant is convicted of *selling* phencyclidine. The mandatory language prohibiting probation for sellers when contrasted with the discretionary power to grant probation in the unusual case for furnishers of phencyclidine discloses beyond a doubt the legislative purpose to flatly deny probation to all *sellers* of phencyclidine.

At least two prior decisions of the Court of Appeal have reached similar conclusions with respect to Penal Code section 1203.07. In both *People v. Ibarra* (1980) 114 Cal.App.3d 60, 65-66 [170 Cal.Rptr. 440], and *People v. Cooper* (1979) 95 Cal.App.3d 844, 854 [157 Cal.Rptr. 348], the court followed the lead of *People v. Tanner, supra,* 24 Cal.3d 514, and determined that the mandatory language "probation shall not be granted to" meant precisely what it said. We see no reason to deviate from those sound holdings.

### Cruel and Unusual Punishment

Defendant contends a commitment to state prison for any of the three prescribed terms (three, four, or five years) for the crime of selling phencyclidine would constitute cruel and unusual punishment within the meaning of article I, section 17 of the California Constitution. Relying on *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], defendant argues the punishment as applied to her is cruel and unusual since it is so disproportionate to the crime and to her personal circumstances that "it shocks the conscience and offends fundamental notions of human dignity." (*Id.,* at p. 424.)

The trial court did not rule on this contention since a prison term was not imposed.

Defendant has not provided evidence sufficient to enable the trial court or this court to conduct the analysis prescribed by our Supreme Court in *In re Lynch, supra,* 8 Cal.3d 410, for determining whether a certain punishment is cruel and unusual. ■ In *Lynch* our Supreme Court set forth three distinct techniques to aid in implementing that standard, namely: (1) an analysis of the nature of the offense and the offender, with particular regard to the degree of danger both present to society; (2) a comparison of the questioned punishment with punishments in California for more serious offenses; (3) a comparison of the challenged penalty with punishment in other jurisdictions for the same offense.

■ Beyond the very general conclusory facts presented there is no evidence relating to the specific economic conditions under which defendant acted. There is on the other hand evidence that defendant was involved in the sale of phencyclidine on other occasions. The trial court has not yet selected one of the three possible terms and while we do not suggest that any specific term would support defendant's contention (see *People* v. *Ibarra, supra,* 114 Cal.App.3d 60, 66), we simply decline to decide the issue in a vacuum.

We further observe that while defendant correctly alludes to the nature of the crime as a consideration in determining whether the prescribed punishment is disproportionate and thus possibly cruel and unusual (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697]), she makes no attempt to classify the sale of phencyclidine in terms of its seriousness and danger to society. We take note, however, of a prior judicial finding that the offense of sale of phencyclidine leads to the destruction of lives and to the commission of other crimes. (See *People* v. *Madden* (1979) 98 Cal.App.3d 249, 260 [159 Cal.Rptr. 381].)

Nor is the denial of probation for certain offenses cruel and unusual punishment. As the Court of Appeal stated in *People* v. *Westoby* (1976) 63 Cal.App.3d 790, 798 [134 Cal.Rptr. 97]: "This contention, also, is invalid. We opine that the statutory denial of probation is reasonable in relation to the magnitude of the offense. Even if 'reasonable men differ as to whether the punishment here is proportionate to the crime we must defer to the Legislature, for it has the "broadest discretion possible . . . in specifying punishment for crime."'" (*In re Foss,* 10 Cal.3d 910, 937 . . . .) And we note that: '[C]ourts have no inherent power to grant probation' (*People* v. *Clay,* 18 Cal.App.3d 964, 969 . . .); the power is wholly statutory [citations]. '"Clothed with the power to prescribe penalties for violations of criminal statutes, it necessarily follows that the legislative branch of the government has the power to declare that in certain of these cases, probation may not be granted."'" (*Bennett* v. *Superior Court,* 131 Cal.App.2d 841,

845 . . .; *People* v. *Hess,* 104 Cal.App.2d 642, 685 . . . .)" (See also *Bosco* v. *Justice Court* (1978) 77 Cal.App.3d 179, 188 [143 Cal.Rptr. 468].)

### *Execution of the Prison Sentence*

█ Defendant argues that by the time this appeal is decided she will have completed the nine-month period of confinement ordered as a condition of probation. If the trial court erred in granting her probation it would be unjust and unfair to now require service of the prison sentence. There is precedent for granting the suggested relief. First invoked under the unusual and uncertain circumstances present in *People* v. *Tanner, supra,* 24 Cal.3d 514, 521-522, it was again followed in *People* v. *Holt* (1985) 163 Cal.App.3d 727, 734-735 [209 Cal.Rptr. 643], wherein the defendant served one year in the county jail as a condition of probation erroneously granted in the face of a clear statutory prohibition. (Pen. Code, § 1203.066, subd. (a)(2).) The court in *Holt, supra,* viewing further confinement as cruel and unusual punishment (Cal. Const., art. I, § 17), stated: "It is one thing for the state to impose a mandatory prison term on a convict and require him or her to serve it. It is quite another thing to incarcerate a convict as a term of probation, allow the convict to successfully fulfill the condition of probation and return to the general population and then with no additional malfeasance on his or her part, remove him or her a second time from the general population to serve the relatively short balance of what should have been the proper sentence. (See *People* v. *Tanner, supra,* 24 Cal.3d 514, 521-522 . . . .)" (*Id.,* at p. 734.)

Other cases since *Tanner* have found somewhat similar circumstances insufficient to warrant the grant of such relief. (*People* v. *Ibarra, supra,* 114 Cal.App.3d 60, 66, fn. 5; *People* v. *Gonzales* (1979) 96 Cal.App.3d 725, 727-728 [158 Cal.Rptr. 205].) The court in *Gonzales* noted as a basis for its holding, that *Tanner* was decided in unique circumstances one of which was the uncertainty of the rule of law *then* existing. (*Id.,* at p. 728.) Such uncertainty did not exist when Gonzales committed his crime with the use of a firearm and by virtually the same token should not be claimed to have existed when Mrs. Enriquez, the defendant herein, sold PCP.

We suggest, however, that another issue must be examined. Did the ultimate disposition in *Tanner, supra,* violate the separation of powers provision of the California Constitution? Article III, section 3, states: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." The Supreme Court in *Tanner, supra,* 24 Cal.3d 514, 522, concluded: "Mr. Tanner having complied with

his conditions of probation—including one year's stay in county jail—we determine a second incarceration would be unjust." The court, however, had just decided that the trial court had no authority to send defendant to county jail rather than to prison. (*Id.*, at p. 521.) The net effect of its final disposition was a commutation of sentence which is defined as a permanent reduction in degree or amount of punishment. (See Black's Law Dict. (5th ed. 1979) p. 254.)

California Constitution, article V, section 8, states: "Subject to application procedures provided by statute, the Governor, on conditions the Governor deems proper, may grant a reprieve, pardon, and commutation, after sentence, except in case of impeachment. . . ." "A commutation is in the nature of a favor which may be withheld entirely or granted upon such reasonable conditions, restrictions and limitations as the Governor may think proper." (*In re Collie* (1952) 38 Cal.2d 396, 398 [240 P.2d 275].) The power to commute a sentence is exclusively the Governor's. In *Way* v. *Superior Court* (1977) 74 Cal.App.3d 165, 176 [141 Cal.Rptr. 383], the court held the California Legislature had no power to grant a reprieve, pardon or commutation after sentence. The California judiciary similarly lacks such power. (See *People* v. *Odle* (1951) 37 Cal.2d 52, 58 [230 P.2d 345].) The Supreme Court in *Odle* construed a 1949 amendment to Penal Code section 1260[4] which empowered the appellate court to "reduce the degree of the offense or the punishment imposed." (Stats. 1949, ch. 1309, § 1, p. 2297.) The amendment, the court held, did not broaden the scope of appellate review (*id.*, at p. 56), but simply empowered the appellate court to itself correct an error by reducing the punishment "in lieu of ordering a new trial, when the only error relates to the punishment imposed. It does not, however, vest power in the court to modify a judgment in the absence of error in the proceedings." (*Id.*, at p. 57.) "To construe the section otherwise would give the court clemency powers similar to those vested in the governor (Cal. Const., art. VII, § 1 [now art. V, § 8]), and raise serious constitutional questions relating to the separation of powers. (Cal. Const., art. III, § 1; see *In re McGee,* 36 Cal.2d 592, 594 [226 P.2d 1], and cases cited in 24 C.J.S. 1091, note 26.)" (*Id.*, at p. 58.)

Whether the ultimate disposition in *Tanner* violated the separation of powers provision of the California Constitution can only be determined by our Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d

---

[4]Penal Code section 1260 provides: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Since it appears the *Tanner* disposition has and will continue to be urged as authority for modification of the prescribed punishment in future cases we respectfully propose this important issue be resolved. As Justice Kaus asked, though from a different angle, in *People* v. *Gonzales, supra,* 96 Cal.App.3d 725, 729: "Does the net result of *Tanner II*—affirmance despite an illegal grant of probation—apply to other beneficiaries of the same error or does it not? Only the Supreme Court knows for sure."

In any event we deem it neither unfair nor unjust on the record before us that defendant herein should serve the term prescribed by law even after having suffered confinement as a condition of erroneously granted probation. Defendant argued for probation in the face of a clear statute providing otherwise. Her momentary victory should not have been viewed by her as clear cut or impregnable. "When a defendant's own actions or actions in which he has acquiesced have caused the delay between the commission of the crime and the entering of prison, he ordinarily will not be heard to contend that the delay constitutes cruel and unusual punishment." (*United States* v. *Albanese* (2d Cir. 1977) 554 F.2d 543, 549.)

The order of the trial court suspending the imposition of sentence and placing defendant on probation is set aside and the matter remanded for further proceedings consistent herewith.

Panelli, P. J., and Brauer, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 20, 1986. Panelli, J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.