[No. D015858. Fourth Dist., Div. One. Feb. 2, 1993.]

THE PEOPLE, Plaintiff and Appellant, v.
GINA MARIE LOCKRIDGE, Defendant and Respondent.

**COUNSEL**

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Craig E. Fischer, Deputy District Attorneys, for Plaintiff and Appellant.

Jan Stiglitz, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**FROEHLICH, J.**—In this appeal we address the court's power under Penal Code[1] section 1170, subdivision (d), to recall a prison sentence and impose a new and different sentence. This power may be exercised by the court only within 120 days of the date of original prison commitment. The court has no discretion or power to extend this 120-day period, its jurisdiction to recall the sentence expiring upon the termination of the period. (*People* v. *Roe* (1983) 148 Cal.App.3d 112, 117 [195 Cal.Rptr. 802].) The question here presented is whether the filing of a notice of appeal deprives the trial court of its power, pending the appeal, to recall the sentence and impose a new and different sentence. A related issue is whether the running of the 120-day period is tolled by the filing of an appeal.

Our conclusion is that although the trial court loses jurisdiction for most purposes upon the filing of an appeal, it is not deprived of its power to recall its sentence and impose a new sentence under section 1170, subdivision (d). Accordingly, the filing of a notice of appeal does not toll the running of the 120-day period, and after the expiration of same the court loses jurisdiction to recall and modify the sentence, even though part of that period coincided with the pendency of an appeal.

I

*Underlying Facts*

Defendant was originally charged with multiple counts of felony child abuse (specifically, violation of §§ 273a, subd. (1), 273d, 245, subd. (a)(1), and great bodily injury enhancements under § 12022.7). Defendant originally entered a not guilty plea, but on the date set for trial withdrew her plea and entered guilty pleas to three counts of willful cruelty or unjustifiable punishment of a child under section 273a, subdivision (1), admitting one great bodily injury enhancement.

A summary of the offenses as contained in the probation report prepared for sentencing was as follows:

"At the preliminary hearing, 12-year-old Richard J. testified [that] in September 1988 he went to live with his maternal grandfather and his wife, Lockridge, after Richard's mother was 'put in jail.' Over the next six months, Richard or one of the two other children living in Lockridge's home was beaten with an electric cord, a shoe, a mallet and a broom handle; and

---

[1]All statutory references are to the Penal Code.

punched, kicked, choked, thrown across the room, held underwater and hit with a hair spray can. They had their ears twisted, their teeth removed with pliers and hot water poured on their genitals." (See *People* v. *Lockridge* (May 2, 1991) D012519 [nonpub. opn.] p. 1.)

The plea bargain contained a stipulation to a nine-year prison sentence. The probation department recommended imprisonment for 11 years and 8 months. After conducting a diagnostic study the court imposed a sentence of five years in prison.

## II

### Postsentence Developments

Defendant's five-year prison term was imposed on May 22, 1990. Defendant moved the court to modify her sentence in June 1990, which motion was denied. She filed her notice of appeal from the court's judgment on June 27, 1990. Defendant then, on September 11, 1990 (within the 120-day period following her sentencing) again moved the court to modify her sentence. On October 18, 1990, the court denied her motion, stating as its reason that "this court lacks jurisdiction, therefore no action is taken at this time."

In May 1991 this court issued an unpublished opinion affirming defendant's conviction and sentence. The defendant then being out of custody on bail, the trial court set August 7, 1991, as the date for the defendant to appear for execution of the judgment. On that date the court issued an order recalling the sentence and setting a hearing date of October 7, 1991, to reconsider the sentence under section 1170, subdivision (d). After further continuances the court ultimately, on November 25, 1991, imposed a new and different sentence of probation. The court's apparent rationale was that it was precluded from exercising sentence review powers under section 1170, subdivision (d) during the pendency of the appeal. Therefore, the running of the statutory 120-day period for sentence modification was tolled during the period, hence extending the period to a time following reacquisition of jurisdiction by the trial court.

The court's motivation for striking the balance of defendant's prison term, the factual basis for which we do not dispute, was that defendant during the period had "changed 180 degrees." She had admitted her acts, shown remorse, undertaken counseling, had been at home on bail, and was now parenting her children in an appropriate manner. The court concluded that further imprisonment would "probably put an end to this family unit forever" and that society would receive more benefit from unifying the family.

## III

### *Discussion*

■ The People assert that the 120-day period in section 1170, subdivision (d) during which the court may recall and resentence runs uninterrupted from the original sentencing and is not tolled by the defendant's filing of a notice of appeal. They conclude the trial court lacked jurisdiction to recall the sentence in August 1991 or to resentence Lockridge on November 25.

Section 1170, subdivision (d) states:

"When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The resentence under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. Credit shall be given for time served."

■ Section 1170, subdivision (d) confers upon the trial court broad authority to "recall a sentence on its own motion for any reason rationally related to lawful sentencing [and] then impose any otherwise lawful resentence suggested by the facts available at the time of resentencing." (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 456 [279 Cal.Rptr. 834, 807 P.2d 1063].) However, the 120-day period specified in section 1170, subdivision (d) is jurisdictional; the court must recall the sentence within the prescribed period. (53 Cal.3d at p. 464; *People* v. *Roe, supra,* 148 Cal.App.3d at p. 116.)

■ As a general rule, "[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur" (*People* v. *Perez* (1979) 23 Cal.3d 545, 554 [153 Cal.Rptr. 40, 591 P.2d 63]) and deprives the trial court of jurisdiction to make any order affecting the judgment (*In re Osslo* (1958) 51 Cal.2d 371, 379-380 [334 P.2d 1]). ■ We agree with the People that section 1170, subdivision (d) provides an exception to the general rule, that is, the 120-day period beginning upon Lockridge's commitment on May 22, 1990, was not tolled during the pendency of her subsequent appeal. While there are

no reported cases expressly discussing this issue, there are cases in which trial courts have recalled sentences after the filing of notices of appeal (see *People* v. *Gainer* (1982) 133 Cal.App.3d 636, 637-639 [184 Cal.Rptr. 120]; *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 845 [212 Cal.Rptr. 174]; *People* v. *Zaring* (1992) 8 Cal.App.4th 362 [10 Cal.Rptr.2d 263]), and there is at least one case containing dictum suggesting there is no tolling (*In re Stallings* (1970) 5 Cal.App.3d 322, 328-329 [85 Cal.Rptr. 96] [discussing former § 1168, the predecessor to § 1170, subd. (d)], disapproved on other grounds by *People* v. *Cookson* (1991) 54 Cal.3d 1091, 1100 [2 Cal.Rptr.2d 176, 820 P.2d 278]). California Rules of Court, rule 33(d) provides: "If the judgment is amended or recalled after the transcript is certified, copies of the amended abstract of judgment or other new dispositional order shall be certified and transmitted to the reviewing court, the defendant, the Attorney General, and defendant's counsel on appeal. . . ." This suggests the propriety of recall after the filing of the notice of appeal.

Policy reasons support our conclusion. "The obvious danger posed by the perpetuation of a court's jurisdiction to recall a sentence long after it has been executed is that it works an infringement upon the power of the executive branch, under the auspices of the Department of Corrections, to fix sentences and grant parole. . . ." (*People* v. *Calhoun* (1977) 72 Cal.App.3d 494, 497 [140 Cal.Rptr. 225] [rejecting the defendant's contention that § 1168 permitted the trial court to extend the 120-day period by "successive invocations of the recall and sentencing power"].) Open-ended authority to recall and resentence would also "infringe on the power of the Legislature to establish a determinate sentencing system providing statutorily fixed terms for given crimes to be imposed by courts with limited discretion to vary those terms. . . ." (*People* v. *Roe, supra,* 148 Cal.App.3d at p. 117.)

Because we conclude the trial court's recall and resentencing were fatally untimely, we need not address the People's further contention the court lacked jurisdiction to modify its sentence after this court had affirmed the judgment and remanded the matter for the limited purpose of executing the sentence.

Lockridge contends that, even if we determine the court lacked jurisdiction to modify her sentence, we should affirm the imposition of probation under the *Tanner* principle. This is a concept, first enunciated in *People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328] (hereafter *Tanner*) and subsequently applied in *People* v. *Holt* (1985) 163 Cal.App.3d 727 [209 Cal.Rptr. 643] (hereafter *Holt*), which permits affirmance of an unauthorized probationary grant when the terms of probation have been carried out by the defendant, the defendant has been released from

incarceration and has returned to a productive life, and it would be "unfair," under all the circumstances, to return him to prison.

■ A close reading of *Tanner*, and the several cases which subsequently have distinguished it, produces the following apparent guidelines for application of this admitted "exception to the rule" of reincarceration. (*People* v. *Almodovar* (1987) 190 Cal.App.3d 732, 749 [235 Cal.Rptr. 616].) The mistake in the original grant of probation must have arisen from an uncertainty in the law reasonably giving rise to the trial court's erroneous disposition—one which would have created "an unusual burden on defendant and a dilemma for [the] court." (*Tanner, supra,* at p. 521.) Relief will not be granted where the error of law, or at least the likely risk thereof, was one of which both the court and the defendant should have been aware. (*People* v. *Almodovar, supra,* 190 Cal.App.3d at p. 749.)

A second requirement for application of the *Tanner* principle is that the defendant have served or complied with the terms of probation, and that in reliance thereon he shall have returned to a law-abiding and productive life. In *Tanner*, for instance, the defendant had served his one-year term of jail incarceration and had returned to civilian life. In *Holt*, the defendant had similarly served his jail term and "return[ed] to the general population . . . with no additional malfeasance." (*Holt, supra,* at p. 734.) In *People* v. *Reyes* (1989) 212 Cal.App.3d 852 [260 Cal.Rptr. 846], *Tanner* was distinguished on such ground, the defendant in *Reyes* never having been released from prison. "The question in [*Tanner* and related cases] was . . . one of reincarceration after a period of freedom, in some cases a freedom of great duration, which would raise vastly different expectations and considerations. . . . We conclude that the exception should not be extended to prisoners who remain incarcerated." (*People* v. *Reyes, supra,* at p. 857.)

A third apparent requirement for application of the *Tanner* principle is that, because of unusual circumstances generating some unique element of sympathy for the defendant's plight, returning him to jail would be more than usually painful or "unfair," as stated in *Tanner*. In *Tanner*, for instance, the actual criminal intent of the defendant in perpetration of the original crime seems to have been in doubt (his "robbery" appears to have been a charade intended to convince a former customer to renew a burglar alarm). In *Holt*, the court and the probation officer concluded that the victim, found to have suffered bodily injury, "may have been an initiator, willing participant, aggressor or provoker of the incident." (*Holt, supra,* at p. 734.) In a number of cases which refused to apply the *Tanner* exception to the rule there were no unusual circumstances warranting special treatment of the defendant. (See, e.g., *People* v. *Gonzales* (1979) 96 Cal.App.3d 725, 728

[158 Cal.Rptr. 205]; *People* v. *Ibarra* (1980) 114 Cal.App.3d 60, 66 [170 Cal.Rptr. 440]; *People* v. *Sandoval* (1987) 194 Cal.App.3d 481, 488 [239 Cal.Rptr. 544].)

 We turn to apply this three-pronged test to defendant Lockridge. The first requirement—that the trial court and the defendant be reasonably in doubt as to the applicable rule of law—is obviously met. We have determined to publish this opinion because we concluded there was no reported case expressly dealing with the question.

The second prong of the *Tanner* test also seems to be satisfied. Prior to her release on bail pending this appeal Lockridge spent more than 10 months in custody—a period clearly in excess of any custodial time the judge would have imposed as a condition to probation. After her release she returned to her home, dramatically changed her conduct and attitude toward the children who had previously been abused, and is now properly parenting them.

We find some difficulty in identifying facts which satisfy the third *Tanner* requirement: that for some reason the reincarceration of the defendant would be unusually unfair. Unlike the defendants in *Tanner* and *Holt*, we find no mitigating circumstances in the perpetration of the original crimes. Lockridge's original abuses of the children were sufficiently heinous to warrant recommendations by the probation department of many years in prison. We do find, however, one element in this case which sets it apart from the more typical case of judicial error in sentencing, and it is an element which generates some considerable sympathy for the defendant. The trial judge here, upon reasonable grounds, determined that it would be appropriate to modify Lockridge's sentence from a prison sentence to probation. The judge (in accordance with our determination in this case) had the power to do just that, but because of judicial error, thinking he lacked jurisdiction, failed to act timely. Then at a later date when the judge took action to modify the sentence, we have found that he was without jurisdiction to do so.

In other words, Lockridge is peculiarly put upon by errors in the judicial system if we now send her back to prison. Her release on probation was not fundamentally or elementarily in error; it failed simply because the judge selected the wrong time to order it. This unique factual situation constitutes, in our minds, sufficient reason to conclude that returning Lockridge to prison at the present time would indeed be "unfair," to use the terminology of *Tanner.*

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and Nares, J., concurred.