Filed 9/25/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B249493 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TA122476) |
| v. | |
| ESTEVAN HARO ESPINOSA, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Vacated.

Jackie Lacey, District Attorney, Roberta T. Schwartz and Carolyn Nakaki, Deputy District Attorneys, for Plaintiff and Appellant.

J. Kahn, under appointment by the Court of Appeal, for Defendant and Respondent.

Plaintiff and appellant the People of the State of California appeal from the trial court's order reducing defendant and respondent Estevan Espinosa's first degree murder conviction to second degree murder, and resentencing him to a lower term. They contend: (1) the court lacked jurisdiction to modify the judgment; and (2) even if the court retained jurisdiction, modification of the judgment was improper because sufficient evidence supported the jury's first degree murder verdict and sentence for that crime did not constitute cruel or unusual punishment. Because the People's first contention is dispositive, we reinstate the jury's first degree murder verdict and the original sentence.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

In light of the issues presented on appeal, we summarize the evidence adduced at trial.

a. *People's evidence*

The victim, Delmirio Lopez, was the boyfriend of appellant Espinosa's mother, Ebelia Haro, and they had lived together for approximately eight years. In March 2012 Lopez, Haro, appellant Espinosa, Espinosa's younger brother, 18-year-old Asahel, and his younger sister, 16-year-old D., had recently moved to a small apartment. D. and Asahel slept in one bedroom; Lopez and Haro slept in another; and Espinosa slept on the living room couch.[1] Lopez was the "breadwinner" for the family, paying for rent, food, clothing, and other necessities.

On March 17, 2012, Lopez, Haro, Lopez's friend Roberto Ramirez Cortez, and Espinosa went out to dinner at approximately 11:00 p.m. Lopez, Haro, and Cortez had been drinking beer for several hours, and had more at the restaurant. After dinner the group went back to the apartment. Haro, Lopez, and Cortez drank more beer.

---

[1]  For the sake of convenience, we sometimes hereinafter refer to Espinosa's siblings by their first names.

Cortez testified[2] that at approximately midnight, he and Lopez went into the bedroom Lopez and Haro shared to turn on some music. Espinosa followed them. Lopez angrily asked why Espinosa did not have a job. Cortez returned to the living room, where he and Haro continued drinking. Five minutes later Lopez exited the bedroom and began cutting lemons in the kitchen. Five minutes after that, Espinosa, who had put on a sweatshirt, emerged from the bedroom and approached Lopez. Espinosa pulled out an ice pick, pulled Lopez toward him, and stabbed Lopez repeatedly. Lopez fell to the ground. Espinosa fled from the apartment. Cortez did not see a weapon in Lopez's hands when Espinosa attacked.

Lopez died of his injuries several hours later. He had suffered 17 stab wounds to his torso, neck, and head, ranging from five inches to less than an inch in depth. These included five fatal wounds: two to his back that perforated his aorta; one to his left chest that perforated his heart; and two to his head that penetrated his brain. The wounds were made by two different stabbing instruments: a knife, and an object similar to an ice pick. The fatal wounds to Lopez's head were made with "pretty strong force."

Espinosa turned himself in at a sheriff's station at approximately 6:00 that morning. In a videotaped interview conducted by detectives, Espinosa stated that just before the stabbing Lopez had entered D.'s bedroom and tried to take her photograph; Espinosa told him not to; and Lopez smirked and stated the photo was for his phone's "caller ID." Espinosa did not believe Lopez and thought the picture was "something sexual in nature." Espinosa followed Lopez to the living room and demanded he not take pictures of his sister. Lopez pushed Espinosa and threatened to knock him out or beat him up. Haro tried to separate the men. Lopez pushed Espinosa again. Espinosa thought Lopez was going to hit him, and panicked. He grabbed a knife and an icepick and stabbed Lopez. Prior to the stabbing, Espinosa had never been involved in a physical altercation with Lopez.

---

[2]     Cortez was unavailable to testify at trial. Accordingly, his preliminary hearing testimony was read to the jury.

b. *Defense evidence*

Espinosa's older sister, Yahaira, testified that approximately six years before the murder, she asked Espinosa to keep an eye on D. because she believed Lopez had been molesting D.

D. testified that on the night of the murder, she went to bed in her room at approximately 11:00 p.m., wearing a tank top and sweatpants. Thereafter, Asahel also went to sleep in the bedroom they shared, while her mother and the other adults drank beer in the living room. Earlier that day Lopez had tried to take a picture of her for his cellular telephone's caller ID, but she had refused. She was awakened when Lopez opened her bedroom door and tried to take a picture of her. Espinosa followed and asked why Lopez was trying to take D.'s picture. Lopez replied that Espinosa could not tell him what to do. D. stated that she did not want her picture taken. Lopez pushed Espinosa. D. called for her mother, who took Lopez back into the hall. D. locked the bedroom door, but the lock was not working. She was afraid Lopez would return, but he did not. D. told detectives that Lopez "gave [her] a bad feeling." It was not unusual for him to enter her bedroom in the middle of the night.

Asahel testified that when he arrived home on the night of the murder, D. was dozing off in the bedroom they shared. He went to sleep. He was awakened later by noise outside the bedroom. He went to the living room and saw Lopez on the ground and Espinosa standing in the kitchen. Asahel told Espinosa to leave.

Espinosa testified in his own behalf. He claimed Lopez had told him he had been in the military in El Salvador, had killed his sergeant, and had served time in jail. Lopez was a "kind of aggressive," "machismo" person. Lopez always carried a folding knife with a four- to five-inch blade on his person. Espinosa believed Lopez was sexually attracted to D. based on how he stared at and interacted with her.

On the night of the murder, Espinosa saw Lopez in D.'s doorway taking a picture with his cellular phone. Espinosa did not believe Lopez was taking a picture for his caller ID, and thought Lopez was just "[p]robably" going to "go inside her room and touch her, molest her right there." Espinosa thought he was the only one who could stop

4

Lopez. When Espinosa told Lopez not to take the picture, Lopez became aggressive, and D. appeared scared. Lopez "kind of grinned" or smirked at Espinosa as if to say, " 'you don't tell me what to do.' " He pushed Espinosa. When Haro tried to intervene, Lopez "kind of" pushed her and raised his voice. In the kitchen, Lopez pushed Espinosa again and moved his arm as if he was "going to swing at [Espinosa] or . . . get something." Espinosa was afraid and thought Lopez was "going to do something" to him. Espinosa saw a knife and an ice pick in the kitchen and grabbed both. He approached Lopez and began swinging his arms. That was the last thing Espinosa remembered until he found himself staring at Lopez on the floor.

An ice pick was customarily kept at various locations in the home. Either in the morning or early evening the day before the stabbing, Espinosa had seen it by Haro's bed. He testified that it was already in the kitchen when he grabbed it and used it against Lopez.

2. *Conviction and post-trial proceedings*

On November 27, 2012, the jury found Espinosa guilty of first degree murder (Pen. Code, § 187, subd. (a)),[3] with the personal use of a deadly and dangerous weapon, a knife. (§ 12022, subd. (b)(1).)

On January 4, 2013, Espinosa filed a motion for a new trial on the grounds that the court had misdirected the jury, erred by excluding evidence, and improperly restricted voir dire. The motion did not assert that the evidence was insufficient, or that sentencing Espinosa as a first degree murderer would amount to cruel or unusual punishment. To the contrary, the motion stated that the "verdict was not contrary to the evidence presented."

The trial court heard and denied the motion on January 15, 2013, concluding there had been no legal error in the trial. Before it sentenced Espinosa, the court stated that although it had presided over at least a dozen murder cases as a judge, and tried close to

---

[3]      All further undesignated statutory references are to the Penal Code.

5

50 as a prosecutor, "this has been a very difficult case for this court." The court did not believe Lopez had engaged in any sexual conduct toward D., and did not think Espinosa believed that Lopez had done so. The court was at a loss to explain why Espinosa committed the murder, observing, "everyone in there had been drinking. And the court feels that there is more to this story" than was revealed at trial. The court observed Espinosa had no significant record. Although he had a tattoo reading "Compton," it did not necessarily indicate gang involvement. The court stated: "This is, without a doubt, the most difficult sentencing that I've had to do." Nonetheless, the court sentenced Espinosa to the statutorily mandated term of 25 years to life in prison (§ 190, subd. (a)), plus one year for the arming enhancement, for a total of 26 years to life. The court imposed a restitution fine, a suspended parole restitution fine, a court operations assessment, and a court construction fee. It set a victim restitution hearing for February 7, 2013.

Espinosa filed a notice of appeal on January 15, 2013. The abstract of judgment was filed on January 16, 2013. The appellate record was filed with this court on February 1, 2013.

On February 7, 2013, the parties appeared for the restitution hearing.[4] The court stated: "[W]e set today as a restitution hearing. The court, in the interim period of time, spoke with both the People and the defense in this matter, and explained to both that the court was considering a re-sentencing in this matter and striking the first and making this a second degree murder." It explained "the [onus] was on the People . . . because the inclination of the court was to reduce it to a second." At defense counsel's request, and over the People's objection, the court continued the hearing.

On March 15, 2013, the defense filed a motion to reduce the conviction to voluntary manslaughter, on the ground that the sentence constituted cruel and unusual

---

[4]    We take judicial notice of the record in Espinosa's appeal, which is before us in case No. B246238. (Evid. Code, § 452, subd. (d).)

6

punishment under *People v. Dillon* (1983) 34 Cal.3d 441.[5]  The People filed an opposition in advance of Espinosa's motion, arguing that the trial court lacked jurisdiction to modify the jury's verdict because Espinosa had already filed a notice of appeal.

On April 9, 2013, the case was called for the restitution hearing and for resentencing.  The court noted it had "invited [the] defense to bring a motion for re-sentencing" over the People's objection.  The prosecutor argued the court lacked jurisdiction because the court had already denied Espinosa's new trial motion, and Espinosa had already filed a notice of appeal.  The prosecutor objected, "[e]ven if all parties agree, the law does not allow the court to do what it . . . basically is allowing the defense to do, to now make a motion."  The court interjected:  "Let me stop you there just for one moment. . . .  [W]hen you say 'allow,' it was the court that invited the defense to bring this motion.  And so I just want to make sure that it's the court that is taking this action."  The court opined that it did, in fact, retain jurisdiction to resentence Espinosa:  "Pursuant to [section] 1170(d), I do believe that I have the authority to recall this and resentence the defendant within the 120 days on the court's own motion, and pursuant to [section] 1181, that I may modify this verdict."  The court stated it "believe[d] that clearly this is the right thing to do."

The court found that the crime could not appropriately be reduced to voluntary manslaughter.  However, "the court does not believe that the defendant is guilty of a first degree murder but of a second degree murder" based on the evidence presented.  The only basis for the jury's first degree murder verdict was that "there was testimony that was given that Mr. Espinosa, just moments—and when I say 'moments,' it seems seconds prior to the murder—left the area where this argument occurred, and seems like that was in the hall, goes into his mother's bedroom, takes an icepick, retrieves that, then goes into

---

[5]     *Dillon* was abrogated on other grounds by *People v. Chun* (2009) 45 Cal.4th 1172, 1185-1186.  *Chun* concluded that assaultive crimes merge with a charged homicide and cannot be the basis for a second-degree felony-murder instruction.  (*Id.* at p. 1178.)

the kitchen where Mr. Lopez was cutting up limes. [¶] He not only uses that icepick for a stabbing instrument, but also it appears the knife that Mr. Lopez was actually cutting limes with for the next set of Corona beers." While recognizing that "premeditation is obviously not measured in time, and it is measured in the extent of the reflection," the court opined, "I do think that deliberation and premeditation [are] lacking . . . ."

The court further reasoned that a 25-years-to-life sentence amounted to cruel and unusual punishment. It explained: "[I]n accord with *Dillon,* I believe that it would be cruel and unusual punishment—and I know that's a term that perhaps may not be the most appropriate in this case because, regardless of what I am doing, Mr. Espinosa, this was truly a heinous crime—I do think this was a crime of rage, and I think that the—what I have cited as far as the premeditation is the only thing that I can look back on with the evidence in this case, and that is the retrieval of that icepick that would allow for a first. [¶] And, again, I don't think that the extent of reflection in this matter is appropriate. And [punishing] it . . . as a first would be grossly disproportionate to what the offense was . . . ."

Taking into consideration the nature of the offender, the court observed that Espinosa had been 21 years old when he committed the murder.[6] He had no record except for a misdemeanor conviction for driving with a suspended or revoked license (Veh. Code, § 14601). There was no indication he was a gang member. He turned himself in to police. He appeared to have been truthful and honest in his testimony despite opportunities where he could have twisted the truth in response to counsel's questions. He was remorseful. In the court's view, Espinosa did not pose a future danger to society.

To sum up, the court stated: "[A]s a judge, I believe that I have to do what is the right thing. And this is not something that I have taken lightly. I do not stay up at night.

---

[6]     The trial court's statement of Espinosa's age appears to be incorrect. Espinosa testified that he was 23 years old at the time of trial. Because he committed the murder approximately eight months before trial, he was either 22 or 23 at the time of the killing.

8

I have a lot of cases, and this is not a situation where I go home and I can't sleep because of what I'm hearing in the courtroom. I live my life and do my thing because it usually does not bother me. [¶] This case has bothered me. . . . Once I made the decision in this case to do what I think is the right thing, I have had no problems sleeping."

Accordingly, the court reduced the offense to second degree murder, and resentenced Espinosa to a term of 16 years to life.

On April 16, 2013, Espinosa filed a second notice of appeal.[7]

The People appeal the court's April 9, 2013 order reducing the degree of the offense and resentencing Espinosa. (§ 1238, subd. (a)(6) & (10).)

DISCUSSION

*The trial court did not have jurisdiction to modify the verdict and resentence Espinosa.*

The People argue that the trial court lacked jurisdiction to modify the judgment because it had already denied Espinosa's new trial motion, and Espinosa had already filed a notice of appeal. Espinosa counters that the trial court was empowered by section 1170, subdivision (d) to recall the case for the purpose of considering the *Dillon* factors and resentencing him.

Generally, the filing of a notice of appeal vests jurisdiction in the appellate court and divests the trial court of jurisdiction to make any order affecting the judgment. (*People v. Wagner* (2009) 45 Cal.4th 1039, 1061; *People v. Perez* (1979) 23 Cal.3d 545, 554; *People v. Nelms* (2008) 165 Cal.App.4th 1465, 1471; *People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1757; *Portillo v. Superior Court* (1992) 10 Cal.App.4th 1829, 1834.) " 'Because an appeal divests the trial court of subject matter jurisdiction, the court lacks jurisdiction to vacate the judgment or make any order affecting it. [Citations.] Thus, action by the trial court while an appeal is pending is null and void. [Citations.] Indeed, "[s]o complete is this loss of jurisdiction effected by the appeal that even the consent of

---

[7]      Espinosa's appeals in case Nos. B246238 and B248189 have been consolidated.

9

the parties has been held ineffective to reinvest the trial court with jurisdiction over the subject matter of the appeal and that an order based upon such consent would be a nullity." [Citation.]' " (*Nelms*, at p. 1471; *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473.)

"The purpose of the rule depriving the trial court of jurisdiction pending appeal ' "is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it." [Citation.]' " (*People v. Alanis, supra*, 158 Cal.App.4th at p. 1472; *People v. Nelms, supra,* 165 Cal.App.4th at p. 1471.)

Several exceptions to this rule exist. (See generally *People v. Alanis, supra,* 158 Cal.App.4th at pp. 1473-1474.) As pertinent here, it has long been held that under section 1170, subdivision (d),[8] the trial court retains jurisdiction to recall a sentence in a criminal matter and to resentence the defendant notwithstanding the pendency of an appeal. (*People v. Nelms, supra,* 165 Cal.App.4th at p. 1472; *Alanis*, at p. 1475; *People v. Lockridge, supra,* 12 Cal.App.4th at p. 1757; *Portillo v. Superior Court, supra,* 10 Cal.App.4th at pp. 1835-1836.) Section 1170, subdivision (d) "allows a sentencing court to recall its sentence 'within 120 days of the date of commitment on its own motion . . . .' After recall, the court may 'resentence the defendant in the same manner as if he or she had not previously been sentenced,' provided any new sentence does not

---

[8]     Section 1170, subdivision (d)(1) provides: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the secretary, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. Credit shall be given for time served."

exceed the original sentence, grants credit for time served, and 'appl[ies] the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. . . .' " (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 (*Dix*).) The court's authority to resentence is as broad as that it possessed when the original sentence was pronounced. (*Id.* at p. 456; *People v. Johnson* (2004) 32 Cal.4th 260, 266.) "[W]ithin the 120-day period, the court may recall a sentence on its own motion for any reason rationally related to lawful sentencing." (*Dix,* at p. 456.)

Here, the trial court acted within the statutory 120-day time period. The court's comments make clear the recall and resentencing was on its own motion, despite the fact Espinosa filed a motion, upon the court's invitation, to reduce the degree of the crime and sentence. (See *People v. Pritchett* (1993) 20 Cal.App.4th 190, 193 [defendant does not have standing to initiate a motion to recall a sentence under section 1170, subdivision (d)]; *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1204-1205 [same].) Thus, if the court had merely resentenced Espinosa to a term authorized when the original sentence was pronounced, it would have acted within its jurisdiction. However, the court did not simply resentence Espinosa to a term that it had authority to impose in the first instance. The lowest term available for a first degree murderer is 25 years to life in prison. (§ 190, subd. (a) ["Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life"].) Instead, the court also *modified* the jury's verdict by reducing the offense to second degree murder. Then, based on the modified judgment, the court imposed the new sentence. The court lacked jurisdiction to modify the judgment in this fashion. (See *People v. Blount* (2009) 175 Cal.App.4th 992, 998 ["section 1170 does not provide the trial court with any broader discretion to impose sentence than the court originally possessed at the initial sentencing"].) After a defendant has filed a notice of appeal, under section 1170, subdivision (d), a trial court has jurisdiction to modify a defendant's sentence, but not the jury's verdict.

*Nelms* is instructive. There, while the defendant's case was pending on appeal the

11

trial court recalled his sentence pursuant to section 1170, subdivision (d) and, without opposition by the People, dismissed his smuggling conviction. It then sentenced him to a lower term. (*People v. Nelms, supra,* 165 Cal.App.4th at p. 1468.) *Nelms* concluded the trial court had exceeded its jurisdiction. (*Id.* at p. 1471.) The court reasoned: "By its express terms, section 1170, subdivision (d), is limited to *sentencing* and says nothing about modifying the judgment." (*Nelms*, at p. 1472, italics added.) Therefore, the "recall was limited to *resentencing* and did not give the court authority to modify the judgment of conviction." (*Id.* at p. 1472, italics added.) Rather than merely resentencing Nelms, the "court first dismissed one of the counts on which he was convicted, thereby altering the judgment itself. Then, based on this modified judgment, the court imposed a new sentence." (*Ibid.*) This, *Nelms* reasoned, was impermissible: "the trial court had no jurisdiction to dismiss the smuggling count once defendant filed his notice of appeal, even if the parties agreed to such action. And because the resentencing was premised on dismissal of the smuggling count, it too is of no force and effect." (*Id.* at p. 1473; *People v. Alanis, supra,* 158 Cal.App.4th at p. 1474 [trial court lacked jurisdiction under section 1170, subdivision (d) to recall sentence to allow the defendant to withdraw his plea].)

As is readily apparent, the same is true here. The trial court did not simply resentence Espinosa; it modified the jury's verdict by reducing the degree of the murder. The resentencing was premised on this modification. Contrary to Espinosa's contention, the fact the *Nelms* court dismissed a count, whereas here the court reduced the degree of the offense, does not meaningfully distinguish the two situations: in both, the court modified the verdicts, rather than simply resentencing the defendants, and based on the modifications, imposed a new sentence. Section 1170, subdivision (d), did not confer jurisdiction for the modification, only for resentencing. Thus, the trial court's action is null and void. (*People v. Alanis, supra,* 158 Cal.App.4th at p. 1473.)

Espinosa argues that under *People v. Dillon, supra,* 34 Cal.3d 441, a trial court has authority to reduce a first degree murder to a second degree murder and resentence a defendant accordingly, if the first degree sentence amounts to cruel and unusual punishment. *Dillon* held that "the penalty for first degree felony murder, like all statutory

12

penalties, is subject to the constitutional prohibition against cruel or unusual punishments (Cal. Const., art. I, § 17), and in particular to the rule that a punishment is impermissible if it is grossly disproportionate to the offense as defined or as committed, and/or to the individual culpability of the offender. [Citation.]" (*Dillon*, at p. 450.) Because "such disproportion [was] manifest on the record" in *Dillon*, the court "modif[ied] the judgment to punish [the] defendant as a second degree murderer." (*Ibid.*)

Espinosa is correct that "on a determination that a particular punishment is cruel or unusual," a trial court has the authority to modify the judgment to reduce the degree of the offense. (*People v. Cole* (2001) 88 Cal.App.4th 850, 869; *People v. Mora* (1995) 39 Cal.App.4th 607, 615-616; *People v. Leigh* (1985) 168 Cal.App.3d 217, 223; 3 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Punishment, § 235, p. 382 [both trial judges and appellate courts are authorized and required to apply *Dillon* analysis].) Thus, we do not disagree that a trial court can, in an exceptional case, reduce the degree of a crime to avoid imposing an unconstitutionally cruel or unusual sentence. (See *People v. Mora, supra,* 39 Cal.App.4th at p. 615 [reduction of sentence under *Dillon* is the exception, not the rule].) Further, if only resentencing rather than modification of the verdict was involved, resentencing to avoid an unconstitutional sentence would clearly be a "reason rationally related to lawful sentencing." (See *Dix, supra*, 53 Cal.3d at p. 456.) However, it does not flow from these principles that a trial court can resentence where it must also reduce the degree of the offense in order to do so, when a notice of appeal has been filed. Nothing in *Dillon* suggests an exception to the general rule that the filing of a notice of appeal divests the trial court of jurisdiction.

The trial court also stated it had authority to modify the verdict pursuant to section 1181. As pertinent here, section 1181 provides that "[w]hen a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶] . . . [¶] 6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment

13

accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed[.]"

However, here Espinosa did not move to reduce his sentence to voluntary manslaughter, and the trial court did not act, until *after* Espinosa filed his notice of appeal. Unlike section 1170, subdivision (d), section 1181 does not appear to comprise an exception to the general rule that the filing of a notice of appeal divests the trial court of jurisdiction. Espinosa does not direct us to any authority so holding, and we are aware of none. Therefore, the trial court lacked jurisdiction to modify the jury's verdict when it did. (See *People v. Nelms, supra,* 165 Cal.App.4th at p. 1471.)[9]

Because the trial court lacked jurisdiction to reduce the offense to second degree murder, its order is null and void and of no effect.[10]

---

[9] The People urge that Espinosa's motion to reduce his conviction was "effectively a second motion for a new trial pursuant to section 1181." They point out that "in a criminal case, a trial court that has *denied* a motion for a new trial lacks authority to consider and grant a second or renewed motion for a new trial." (*People v. DeLouize* (2004) 32 Cal.4th 1223, 1228; see also *People v. Wisely* (1990) 224 Cal.App.3d 939, 948 [generally, " 'once a trial court has decided a new trial motion, it may not reconsider its ruling or entertain subsequent requests for new trial' "; otherwise, " 'proceedings on new trial motions might "become interminable" ' "].) But we need not consider whether the People's characterization of Espinosa's motion is correct. "A trial court obviously cannot reconsider its new trial motion ruling after it has lost jurisdiction over the case." (*People v. Rose* (1996) 46 Cal.App.4th 257, 263.) Espinosa's filing of his notice of appeal divested the court of jurisdiction to act pursuant to either section 1181 or section 1170, subdivision (d).

[10] In light of our conclusion, we do not reach the parties' arguments regarding whether the first degree murder sentence constituted cruel and unusual punishment, whether there was sufficient evidence to establish premeditation and deliberation, or whether the People's appeal, insofar as it concerns the sufficiency of the evidence, is barred by double jeopardy principles.

## DISPOSITION

The trial court's order reducing the offense to second degree murder and imposing a sentence of 16 years to life is vacated for lack of subject matter jurisdiction.  The jury's first degree murder verdict and the original sentence of 25 years to life in prison is reinstated.  The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections.

**CERTIFIED FOR PUBLICATION**


ALDRICH, J.


We concur:


KLEIN, P. J.


KITCHING, J.


15