Filed 2/17/23  P. v. Garcia CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F082157 |
| Plaintiff and Respondent, | (Super. Ct. No. F20903780) |
| v. | |
| MICHAEL DAVID GARCIA, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Jennifer A. Gibson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Michael David Garcia appeals following his conviction for and sentencing on one count of making criminal threats (Pen. Code, § 422)[1] and one count of trespassing (§ 622, subd. (m)) with the enhancements that he had a prior serious felony (§ 667, subd. (a)(1)) and "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Appellant challenges the trial court's sentencing decisions regarding whether to dismiss appellant's prior conviction, certain fines and fees imposed, and the credits provided for appellant's preconviction incarceration. Appellant also challenges the instructions given and evidence submitted with regard to his trespassing conviction. For the reasons set forth below, we reverse the trespassing conviction and affirm the remaining judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant had an altercation with his neighbors in June 2020. His neighbors, the Whitakers, owned their property and were having their daughter and her family, the Tates, over to visit. That morning, Ms. Tate had seen appellant pacing on his property and yelling, "I'm gonna get you …," at her. Later in the afternoon, while the family was outside again, Mr. Tate saw appellant pacing around the property line while yelling and cursing. The family went inside.

A short time later, Mr. Whitaker saw appellant drive up Mr. Whitaker's driveway. Mr. Whitaker went to the front door to speak with appellant. When Mr. Whitaker opened the door, appellant began yelling that the two needed to settle things and making comments about Mr. Whitaker's daughters. Mr. Whitaker told appellant to leave. After a few minutes, with appellant not leaving, Mr. Whitaker returned inside his house and Mr. Tate came outside. Appellant began yelling at Mr. Tate and threatening him. Mr. Tate told appellant to leave several times until, seeing appellant reach behind his back, Mr. Tate responded by pulling a gun.

---

[1] Undesignated statutory references are to the Penal Code.

After further threats, appellant left the property. Appellant did not go far, however, stopping at the public road to shout further threats before eventually returning to his property. Once back on his property, appellant again began pacing the boundary between the two properties, several times crossing in between trees that separate a portion of the two properties, while yelling at Mr. Tate. About 10 minutes later, and roughly 20 to 25 minutes after appellant first came to the Whitaker residence, law enforcement arrived and arrested appellant.

Appellant was charged with the felony of making criminal threats (§ 422; count 1) and the misdemeanor of trespassing (§ 602, subd. (m); count 2). The information further alleged appellant had a prior serious felony (§ 667, subd. (a)(1)) and "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) for making criminal threats. A jury convicted appellant of counts 1 and 2. During the course of the trial and outside the presence of the jury, appellant admitted to suffering a prior serious felony conviction.

In a presentencing motion, appellant requested the court strike his prior serious felony conviction. The court considered and rejected this motion at appellant's December 11, 2020 sentencing hearing.[2] The court then sentenced appellant to a total term of nine years on count 1 (criminal threats) and time served on count 2 (trespassing). In addition, the court imposed a restitution fine of $2,700 pursuant to former section 1202.4, along with several standard fees and related fines. Appellant's counsel did not raise any objections related to the fines and fees. However, at the conclusion of the sentencing hearing, when asked if he had any questions about his right to appeal, appellant asked some general questions before stating, "Okay. I don't have money to pay the restitution, and I just came out of fire camp." At this point, the trial court asked again

---

[2] The court's full ruling is recited below in the context of resolving a dispute over the court's decision.

3.

whether appellant had questions about his appeal rights and proceeded to conclude the sentencing hearing.

Appellant timely filed a notice of appeal in December 2020.

Later, in March 2021, appellant's counsel filed a request for resentencing pursuant to former section 1170, subdivision (d). In this motion, counsel argued the court failed to include required presentence credits in its sentence and that the court had improperly imposed a criminal protective order. In addition, the motion requested the court reduce the restitution fine imposed. The motion noted the general rate for prisoner pay before arguing, in total, that appellant "is not objecting to the imposition of a restitution fine; rather, he is respectfully requesting the fine be reduced closer to the minimum amount of $300. While it's true [appellant] can earn money with [*sic*] incarcerated …, the amount is de minimis." Finally, the motion again requested the trial court dismiss appellant's prior strike conviction. The argument here, in total, stated that appellant "defers to his prior REQUEST FOR THE COURT TO DISMISS PRIOR STRIKE CONVICTION motion that was heard on December 11, 2020."

In April 2021, the trial court issued a written order on appellant's motion. The court awarded 357 days credit for time served, ordered a new restraining order be drafted, and declined appellant's requests to reduce the restitution fine and strike his prior conviction. On these later two points, the court wrote: "The court declines the invitation to reduce the restitution fine as there have been no compelling and extraordinary reasons for doing so presented. Further, a notice of appeal has been filed which divests this court of the jurisdiction to consider such requests. [¶] … The court declines the invitation to reconsider its sentencing decision on the strike prior and the five-year enhancement. A notice of appeal has been filed which divests this court of the jurisdiction to consider such requests."

4.

**DISCUSSION**

As noted, appellant challenges the trial court's sentencing decisions and his trespassing conviction. First, appellant argues the trial court wrongly concluded it did not have the authority to reconsider its decision not to dismiss appellant's prior strike for sentencing purposes. Second, appellant contends the court failed to give a necessary unanimity instruction with respect to his trespassing conviction and that the evidence submitted to support that conviction was insufficient. Third, appellant raises two related arguments under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, contending the trial court failed to hold a hearing to determine appellant's ability to pay the fines and fees imposed as part of his sentence. And fourth, appellant calculates, and the People agree, that the presentence credits given to appellant were incorrect and require adjustment.

*Trial Court's Decision to Not Reconsider Appellant's Prior Strike*

Appellant argues the trial court abused its discretion by failing to reconsider whether to strike appellant's prior strike conviction under former section 1170, subdivision (d) (now § 1172.1).[3] Appellant argues the trial court was unaware that it had jurisdiction to reconsider the request after appellant filed his notice of appeal and that the record does not indicate the trial court would have denied the request had it been aware of its authority to act. We do not agree.

Under section 1172.1: "When a defendant, upon conviction for a felony offense, has been committed to the custody of the Secretary of the Department of Corrections and Rehabilitation or to the custody of the county correctional administrator pursuant to subdivision (h) of Section 1170, the court may, within 120 days of the date of commitment on its own motion, at any time upon the recommendation of the secretary or

---

[3]    Effective January 1, 2022, section 1170, subdivision (d) was renumbered section 1170.03. (Stats. 2021, ch. 719, § 2.) Effective June 30, 2022, section 1170.03 was renumbered section 1172.1. (Stats. 2022, ch. 58, § 9.) It appears there have been no substantive changes to the relevant language.

the Board of Parole Hearings in the case of a defendant incarcerated in state prison, the county correctional administrator in the case of a defendant incarcerated in county jail, the district attorney of the county in which the defendant was sentenced, or the Attorney General if the Department of Justice originally prosecuted the case, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence." (§ 1172.1, subd. (a)(1).)

The provision intended to ensure that the trial court "apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2); see *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040–1041 [discussing amendments].) The statute also "confers upon the trial court broad authority to 'recall a sentence on its own motion for any reason rationally related to lawful sentencing [and] then impose any otherwise lawful resentence suggested by the facts available at the time of resentencing.' " (*People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1757 [discussing former § 1170, subd. (d)].) However, the 120-day period for recalling the sentence on the court's own motion is jurisdictional and, therefore, not tolled by the filing of a notice of appeal. (*Id.* at pp. 1757–1758; see *People v. Williams* (2007) 156 Cal.App.4th 898, 909 [120-day period not a jurisdictional bar where court not acting on own motion].)

The court's authority in this situation is discretionary and therefore reviewed for an abuse of discretion. (*People v. McCallum* (2020) 55 Cal.App.5th 202, 210–211.) " ' "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' " [Citation.] The abuse of

discretion standard "involves abundant deference" to the court's ruling.' " (*Id.* at p. 211.) In addition, "[a] court *necessarily* abuses its discretion when it fails to exercise its discretion at all, however." (*People v. Choi* (2021) 59 Cal.App.5th 753, 766.)

Even if this court were to assume appellant could challenge the trial court's decision not to unilaterally exercise its resentencing discretion under section 1172.1,[4] we would find no abuse of discretion on the facts here. We do not agree the trial court was unaware of its authority to act and wholly failed to exercise its discretion. While appellant is correct that the court relied in part on the existence of a notice of appeal to deny the request, the court also wrote that it "declines the invitation to reconsider its sentencing decision on the strike prior and the five-year enhancement." A review of the briefing shows that this comment was not meaningless, as appellant suggests.

Appellant's initial brief requesting the court resentence appellant under former section 1170, subdivision (d) contained only a two-sentence argument on the strike issue: "Mr. Garcia re-invites the court to dismiss the prior strike and five-year enhancement the court applied in its sentence of 9 years. Mr. Garcia defers to his prior REQUEST FOR THE COURT TO DISMISS PRIOR STRIKE CONVICTION motion that was heard on December 11, 2020." Based on the prior motion referenced, the court had previously engaged in a thorough consideration of appellant's request to dismiss his prior strike conviction and rejected that request.

At that time, the court explained in detail its analysis, stating:

"In looking at the specifics of this case and [appellant], the Court finds no facts revealed by the case, his prior cases or [appellant] personally that would cause the Court to exercise its discretion and dismiss the prior strike conviction.

---

**4**      A court's order "*denying* a defendant's request to resentence pursuant to [former] section 1170[,] subdivision (d) is not appealable as an order affecting the substantial rights of the party. This is because the defendant has no right to request such an order in the first instance; consequently, his 'substantial rights' cannot be affected by an order denying that which he had no right to request." (*People v. Pritchett* (1993) 20 Cal.App.4th 190, 194.)

"In this particular case—it is very unique—[appellant] has a long history with this family next door. He was convicted and the strike prior is the same exact charge, [section] 422, just a different victim, Mr. Whitaker's sister who lives in a mobile home on the property. [Appellant] went to prison for that offense, was released, had a few criminal offenses in the meantime, and then in 2018 was—knowing that he was a felon unable to possess any type of firearm, he possessed an illegal homemade zip gun, which is essentially a Frankenstein hoveled [*sic*] together gun with parts, which is illegal standing alone, and was convicted of that. He was alleged to have made a threat again, again against the same victim family that he was acquitted of that in that same charge. Sent to prison again. And then when he was released just months later he is again up on the victim's property. And the facts are already—we've already identified those as well as the transcript of the trial. There just isn't any logical reason why [appellant] would do that, but certainly the type of conduct he has engaged in and engaged in in this particular case does not make him outside the spirit of the Three Strikes Law. [Section] 422 doesn't require violence. If he had had a weapon, his conduct would have been a [section] 242. If he had a firearm it would have been [section] 245(a) (2)—or [section] 245—245(a) (2). The threat causes the victim to be in fear, and his comment—again, uncontradicted—that he would make Mr. and Mrs. Tate's six-year-old daughter his whore is frankly beyond abhorrent. And we know from the testimony that it's the type of conduct that he's engaged in with Mrs. Tate when she was younger and her sisters and all this while appearing at the front door of the victims.

"The Court finds that there is absolutely no fact that would find [appellant] in this case on this conduct beyond the spirit of the Three Strikes Law and therefore denies the motion to strike the strike."

In context, then, the court's direct response that it declines the invitation to reconsider its sentencing decision is not an indication it was unaware of its authority to act. Rather, it is a clear indication that upon a request to reconsider its prior ruling based

8.

on arguments already deeply considered and rejected, the court would decline to do so. We see no basis to conclude this was an abuse of the court's discretion. Further, even if the court's ruling could be construed as a lack of awareness of its discretionary authority at the time, the court's complete and well-articulated basis for declining the strike request prior to sentencing clearly shows that the court would not have acted had it been aware of its discretion to act at this later point. Appellant raised no new grounds for dismissing his prior strike and the court had clearly indicated the facts on the record were insufficient in its view to warrant dismissal. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [error is harmless where record clearly indicates the court would have reached the same conclusion if it were aware of its discretion].)

*Appellant's Trespassing Conviction*

Appellant next argues that his misdemeanor conviction for trespassing (§ 602, subd. (m)) should be set aside. Appellant contends the evidence admitted at trial was insufficient to support the conviction and that the instructions provided to the jury were improper because the trial court failed to give a required instruction on unanimity. With respect to the evidentiary argument, appellant argues the evidence was insufficient to prove the "occupation" element of the specific subdivision charged. Upon review, we agree with appellant that the version of trespass charged cannot be sustained on the evidence admitted. We therefore do not reach appellant's unanimity instruction argument.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Brown* (2014) 59 Cal.4th 86, 105–106.) " 'We do not reweigh

9.

evidence or reevaluate a witness's credibility.' [Citations.] 'Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.' " (*Id*. at p. 106, first bracketed insertion added.)

Appellant was charged with criminal trespassing in violation of section 602, subdivision (m), which prohibits "[e]ntering and occupying real property ... without the consent of the owner." To "occupy" a property for purposes of section 602, subdivision (m) requires " 'a nontransient, continuous type of possession' with 'some degree of dispossession and permanency.' " (*In re Y.R.* (2014) 226 Cal.App.4th 1114, 1119.) Transient overnight use of a property or remaining on a property for several hours is insufficient to meet the occupancy element. (*Id*. at pp. 1119–1120.)

Here, drawing all inferences in favor of the verdict, the evidence supported the conclusion that appellant was on the victim's property for only a matter of minutes. The record contains no evidence that appellant attempted to dispossess the owner of the property or established any kind of permanent presence on the property. Rather, he entered the property legally, was told to leave, argued for a few moments, left, and then reentered the property over several moments as he darted around the property line. None of this activity rises to the level of nontransient, continuous possession required by section 602, subdivision (m).

In opposition, the People argue appellant's primary theory is "that an individual can storm onto private property, threaten the inhabitants, refuse to leave, and still not be guilty of trespass." While we agree that such conduct should constitute trespassing, it is not the type of trespassing covered by section 602, subdivision (m). Rather, such conduct is covered by section 602, subdivision (o), which criminalizes "[r]efusing or failing to leave land, real property, or structures belonging to or lawfully occupied by another and not open to the general public, upon being requested to leave by … the owner, the

10.

owner's agent, or the person in lawful possession." Here, the prosecution elected to proceed on a theory that required nontransient, continuous possession, but could only elicit facts demonstrating transient possession in a brief period after refusing to leave. The evidence is therefore not sufficient to sustain the conviction.

Dueñas *Issues*

Appellant raises two claims relating to the fines and fees imposed in this case. In the first, appellant argues the court erred in ordering a restitution fine under former section 1202.4 without first assessing appellant's ability to pay. In the second, appellant extends that challenge to all of the fines and fees imposed against appellant. The People respond by arguing these claims were forfeited through appellant's failure to object, that the fees and fines were appropriate regardless, and that any alleged error was harmless. We ultimately agree with the People.

We begin with the forfeiture argument. In this matter, appellant was represented by counsel throughout the proceedings. At no point prior to the initial sentencing did counsel object to the proposed fines or fees ultimately imposed. As sentencing occurred in December 2020, *Dueñas* had been known and discussed for nearly two years, including by this court in cases such as *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*). Normally, the failure to object in the trial court forfeits a claim on appeal, even constitutional claims. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) Moreover, " 'discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' " (*In re Sheena K.*, at p. 888, fn. 7.)

Appellant claims that the issue was properly raised, however, because in concluding comments to the judge after sentencing he stated, "I don't have money to pay the restitution, and I just came out of fire camp." Notably, in context, this statement was part of a series of questions about how to appeal generally and did not include any additional commentary about a lack of ability to earn money in the future. At best, then,

it was an unexpected affirmation that appellant currently had no money available to pay the restitution ordered. Given that appellant was represented by counsel who made no objections to the amounts ordered and that appellant made no other comments about his ability to earn money, this one-off factual statement, made outside of the point where the fees and fines were discussed and imposed, is not sufficient to preserve a potential objection to the fines and fees imposed based on an inability to pay. We therefore find the issue forfeited.

Appellant argues that if the issue were forfeited, this would constitute ineffective assistance of counsel. We note, however, that even were the issue properly preserved, we would find no reversible error in the trial court's failure to hold a hearing on appellant's ability to pay. Consequently, appellant cannot demonstrate prejudicially ineffective assistance of counsel in the failure to formally object.

As explained in *Aviles*, *supra*, 39 Cal.App.5th 1055, we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to appellant's level of culpability and thus not excessive under the Eighth Amendment. (See *Aviles*, at p. 1072.)

Even if we agreed with *Dueñas*, we would still reject appellant's constitutional claims and find that any error arising from the court's failure to make an ability to pay finding was harmless since appellant has the ability to pay the restitution fine and the fees that he now challenges. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *Aviles*, *supra*, 39 Cal.App.5th at pp. 1075–1077; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.) " ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the

12.

defendant's ability to obtain prison wages and to earn money after his release from custody.' " (*Aviles*, at p. 1076.)

In this case, appellant's statement to the court that he just "came out of fire camp" is sufficient to show that appellant is able-bodied and capable of working. This fact is further buttressed by the letters submitted on appellant's behalf for sentencing indicating appellant "is [an] apparently very knowledgeable car repairman, repairing tractors" and is otherwise a productive, hardworking individual. Moreover, following sentencing, appellant's counsel submitted the previously discussed request for resentencing. In that document, counsel only argued that appellant would make very little while in prison and raised no issues suggesting appellant would be incapable of work, either while in prison or after his sentence ended.

We can therefore infer that appellant has the ability to pay the fines and fees from probable future wages, including prison wages and postrelease work. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) While appellant may not have immediately had the means to pay the amounts imposed in this case, that circumstance does not support an inability to make payments on these amounts. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

We thus conclude that based on the record before this court, appellant had the ability to pay the fines and fees and any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt.

For the same reason that appellant's *Dueñas* claim fails on its merits, his ineffective assistance of counsel claim would fail for lack of prejudice. "To show ineffective assistance, [a] defendant must show that 'counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'

[Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 761–762.) Here, appellant suffered no prejudice from counsel's initial failure to object to imposition of fines and fees because the fines and fees are not grossly disproportionate to appellant's level of culpability and appellant had the ability to pay the aggregate amount of fines and fees from probable future wages. The outcome would therefore have been no different if counsel had objected to the imposition of the fines and fees. This is particularly so given that even when counsel sought to make an argument, the facts offered in support were limited to appellant's expected prison wages, indicating no additional facts regarding appellant's ability to work could be mustered.

*Presentence Credits*

Finally, appellant contends, and the People agree, that the trial court miscalculated the amount of presentence credits to which appellant was entitled.[5] As the parties note, appellant was entitled to 181 days of actual credit, not the 179 originally calculated. (See *People v. Morgain* (2009) 177 Cal.App.4th 454, 469 ["A defendant is entitled to credit for the date of his arrest and the date of sentencing."].) The parties then agree that 181 days of good time/work credit would be proper.

The court agrees the time imposed was improperly calculated and accepts the parties' agreed-upon calculations on appeal. The court will order the abstract of judgment be amended to provide appellant with 362 days of presentence credit.

**DISPOSITION**

The misdemeanor conviction for trespassing under Penal Code section 602, subdivision (m) is reversed, and the sentence of time served is vacated. The felony

---

[5] Notably, the amount entered was the number requested by appellant's counsel in appellant's request for resentence. Regardless, all parties agree the amount entered was incorrectly calculated.

abstract of judgment shall be modified to reflect 362 days of presentence credit.  In all other respects the judgment is affirmed.


                                                                HILL, P. J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.